## WILSON IRWIN v. HENRY MATTOX.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY.

Argued October 10, 1890—Decided January 5, 1891.
[To be reported.]

1. One who, in consideration of a certain sum of money, has verbally rented a field for the raising of two successive crops, is not a cropper, but a tenant.

2. Such tenant, when there is no stipulation to the contrary, is entitled to the product of the land by any use he may choose to make of it, consistent with the rules of good husbandry.

3. It cannot be held as a matter of law, therefore, that, during the term for which the field was rented, the tenant has no right to pasture his cattle therein on crops belonging to him.

4. The act of April 13, 1807, 4 Sm. L. 473, relating to strays, has no application to cattle straying across an unfenced boundary line between their owner's field and the field of a neighbor.

5. In such case, the seizure of the cattle by the neighbor, while in his own field, being a trespass without justification in the act of 1807, the owner may maintain replevin for his cattle so seized.

6. Jurisdiction under the act of 1807 is founded on the facts recited in it, and if these are absent, proceedings under the act will neither legalize a seizure nor take away the owner's common-law remedy.

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 146 October Term 1890, Sup. Ct.; court below, No 227 February Term 1888, C. P.

Statement of Facts.

On December 20, 1888, Wilson Irwin brought replevin against Henry Mattox for seven cattle. The sheriff replevied the cattle and delivered them to the plaintiff, taking from him the usual bond. The defendant then pleaded non-cepit and property.

At the trial on May 29, 1890, the following facts were shown: In the spring of 1887, the plaintiff leased from Mrs. Mary Ewing a field containing about ten acres, part of a farm belonging to her, for the consideration of $20. The demise was a verbal one, and its terms were in dispute; the testimony for the plaintiff tending to prove that he was to have the land for the raising of two successive crops, while witnessess for the defendant testified that it was to be used for one crop only. After so leasing to the plaintiff, Mrs. Ewing leased her entire farm to the defendant, subject to the plaintiff's rights. The field leased to the plaintiff had at one time been separated by a fence from the adjoining field, but the fence had been burned down prior to 1887 and was not rebuilt.

The plaintiff planted a part of his field in corn, in the spring of 1887. Before its maturity, a part of the corn was trampled down by cattle of Alexander Ewing, and failed to come to perfection. When he came to gather his crop, he left upon the ground the corn which had been so injured, and afterwards turned into the field the cattle in controversy, that they might feed on the damaged part of the crop. The cattle having strayed across the unfenced boundary, between the field into which they were put by the plaintiff and the adjoining field in the possession of the defendant, which was in grass and kept for pasture, and having damaged the latter to some extent, the defendant took them up, while upon his pasture land, drove them to his barn-yard, penned them up therein, and notified the plaintiff that his cattle were in the barn-yard and that if he would pay for the damage done by them, he could have them again; and afterwards told him that he could have them "if he would pay the costs at the squire's office."

There was nothing in the testimony to explain the nature of the proceeding in which the costs thus referred to had been incurred. It was stated in the appellant's paper-book, however, that a proceeding under the stray law of April 13, 1807, 4 Sm. L. 473, had been commenced by the defendant before a justice

Charge of Court below.

of the peace, and that it was still pending on an appeal to the Court of Common Pleas, at the time of the trial of the present case; but the facts so stated do not appear to have been shown upon the trial. The plaintiff refused to pay the damages and costs demanded by the defendant, and resorted to this action to recover his cattle.

At the close of the testimony the court, DOTY, P. J., charged the jury in part as follows:

This proceeding, that the defendant followed, is what is known as the stray law, an old law that has been in force in this state for many years, passed by the legislature in 1807, and which authorized any person who found stray cattle, horses or swine upon his premises, to take up the same if the premises were improved and enclosed lands. . . . . Now, you will observe from the reading of the first section of this act of assembly, that it applies to only one kind of land; that is, improved and enclosed land. If land be unenclosed, if it has no fence surrounding it, and cattle are found upon it, they would not be regarded as trespassing under the provisions of this act of 1807. . . . . .

As early as 1700 there was an act of assembly passed in this commonwealth, that required all improved lands, all corn fields and grounds kept for enclosures, within the said province and counties annexed, to be well fenced with fences at least five feet high, of sufficient rails or logs and close at the bottom. . . . . The act of 1700, to which we referred, was repealed by a subsequent act of assembly passed upon April 4, 1889, P. L. 27; so that, as regards the fencing of lands, the law now is just as it was under the common law, and it does not require the owner of land to fence the same, under the provisions of this act of 1700; but any cattle that are found straying upon the premises would be regarded as trespassing upon the lands of another and could be seized under the provisions of this act of 1807. But the act repealing this act of 1700, was not passed for almost two years after the seizure of the cattle by the defendant in this action, so that this case falls within the provisions of the act of 1700.

Now, in order to determine this question, with this brief reference to the law regulating fences, it will be necessary for

Charge of Court below.

you, under the testimony, in the first place to determine what was the fact with regard to this particular piece of property. The plaintiff alleges that he had rented it, as we understand him, for two years at a stipulated rent, or for two crops; he has given you his construction of that contract, and he has told you precisely, according to his recollection, what passed at the time. Upon the other hand, the defendant alleges that there was no such contract; that the lease extended but for one year, or for a single crop. In support of that contention, the defendant calls Alexander Ewing, if I remember correctly, and another witness, Mrs. Ewing, whose testimony you will recall in that connection. It is important, as the court regards it, for you to determine that as a preliminary fact, before you decide the other question of fact which will be submitted to you.

If it be true that under this contract he had a right to turn his cattle in there, it would be an important question for you to decide, and perhaps would have justified fully the action which the plaintiff took; if, however, there was no right at all upon his part to turn these cattle in there, and he did turn his cattle into this pasture, and they then strayed upon the land of the other party, there may have been some justification for seizing them under this act of 1807, if we correctly understand the evidence, and there was very little, according to our recollection, upon that particular point. We understand that the whole field, and if the court be not correct in this point, the jury has the right to correct us, under the evidence, the whole field was surrounded by a fence; into this field, part of which was in corn and claimed by the plaintiff, and the other part of which was in pasture and claimed by the defendant, these cattle were turned. Between the two parts of the field, perhaps the defendant claiming the whole thing under the terms of the contract, there was no fence at all. We think the evidence is undisputed upon that point.

Now, if the plaintiff, under the terms of his contract, had a right to turn his cattle into the corn stocks, and there was no fence between that part of the land and the land claimed by the defendant, we would say to you, as a matter of law, that the defendant was not justified, under the provisions of the stray law, in seizing these cattle. If on the other hand this whole tract was surrounded by a fence, and the plaintiff had no right

Charge of Court below.

to put his cattle upon any portion of that land, then the field was enclosed, because the dominion of the defendant extended over the whole tract. You will determine, then, what was the contract. . . . .

Now, this as we understand it is the whole case. If this was enclosed and improved land and these cattle had been taken up as trespassing upon the property, the plaintiff would have no case here and no right of complaint. If, on the other hand, under the instructions we have already given you, the land was not enclosed, the defendant was not justified in seizing these cattle, and it would be no defence in this action of replevin. We try here, in this form of action, the right to take the cattle, the right to the possession of the cattle; and it would operate as no defence whatever, unless the defendant, under the instructions we have given you, has shown that he has complied fully and literally with the provisions of this stray law of 1807.

The following points are submitted by defendant's counsel:

1. The uncontradicted evidence being that the cattle were taken damage feasant, the action of replevin will not lie until the fees and charges provided by the act of 1807 are paid, and the verdict must be for the defendant.

Answer: We cannot so instruct you. If the cattle were taken upon enclosed and improved land, under the instructions already contained in our general charge, your verdict ought to be for the defendant; otherwise, it is a question of fact for you to determine.[2]

2. The undisputed evidence is, that the cattle described in the writ of replevin were seized by the defendant under the stray laws of the commonwealth of Pennsylvania, and were at the time the writ was served in the custody of the law; the action of replevin, therefore, does not lie and the verdict must be for the defendant.

Answer: This point is refused.[3]

3. The uncontradicted evidence of the defendant is that the cattle, when taken under the provisions of the stray laws of this commonwealth, were upon his improved and enclosed lands, which cattle, when so taken, were in the custody of the law, and replevin will not lie and the verdict must be for the defendant.

Arguments.

Answer: The facts stated in the point and upon which the legal proposition is based, we submit to you for your determination; the point as a whole is refused.[4]

4. The evidence of the plaintiff is that he paid twenty dollars for two crops, which gave him no right of pasturage, and when he turned his cattle in to pasture, he was a trespasser on the rights of the defendant; and when the said cattle were taken up damage feasant, under the stray laws of the state, the action of replevin will not lie to recover possession thereof, until satisfaction be made or tendered, even if then, and your verdict must be for the defendant.

Answer: This proposition as a whole cannot be affirmed.[5]

—The jury found a verdict in favor of the plaintiff for the property in dispute, with one dollar damages. A rule for a new trial having been discharged, judgment was entered on the verdict; whereupon the defendant took this appeal, assigning for error:

1. "The general doctrine of the charge."

2–5. The answers to defendant's points.[2] to [5]

*Mr. John F. Wentling* (with him *Mr. D. A. Miller*), for the appellant:

1. This action of replevin cannot be sustained, because the plaintiff was bound to follow the special remedy given to him by the act of April 13, 1807, 4 Sm. L. 473, under which these cattle were taken damage feasant: § 13, act of March 21, 1806, 4 Sm. L. 332; Phelps's App., 98 Pa. 549; Beltzhoover Bor. v. Gollings, 101 Pa. 293; Hoffman v. Commonwealth, 123 Pa. 77. If this were not so, then we may have the anomaly of two different tribunals trying the same case at the same time, and perhaps arriving at different results. In this case, this difficulty has arisen, a proceeding under the act of 1807 having been commenced before a justice of the peace, and an appeal therefrom taken by the plaintiff, Irwin, being still pending in the Court of Common Pleas.

2. If the plaintiff was a cropper, as he characterized himself, our position is that, even giving him the fullest benefit of his assertion that he had the right to take off two distinct crops, his rights in the year 1887 ended totally and absolutely when he had cut off the spring crop of that year, and that he was a

trespasser every time he set foot on that field for any other purpose. The right to take a crop from a field does not carry with it a right of pasturage, any more than the privilege of cutting trees from a forest would do so, and in pasturing his cattle in the field he was a trespasser: Reiff v. Reiff, 64 Pa. 135; Bell v. Railroad Co., 25 Pa. 181. The defendant's fourth point was neither affirmed nor denied, and it was error not to answer it: Swank v. Phillips, 113 Pa. 489; Tyrone M. & M. Co. v. Cross, 128 Pa. 636.

*Mr. D. L. Atkinson* (with him *Mr. J. M. Peoples*), for the appellee:

1. On a fair construction of the contract between Mrs. Ewing and the plaintiff, he was a renter, not a cropper. He was not restricted by his lease to any specified mode of removing his crop, and, therefore, having paid a money rent for the field, and being entitled to the entire crop, he had a right to remove it as he saw fit, and was justified in doing so by means of his cattle. It is conceded that there was no fence between the fields of the plaintiff and the defendant, and the jury have found that the defendant's land was not enclosed. Therefore, the provisions of the act of April 13, 1807, 4 Sm. L. 473, do not apply: Gregg v. Gregg, 55 Pa. 227; Race v. Snyder, 10 Phila. 534.

2. Accordingly, the plaintiff could sue out this writ of replevin and recover his cattle wrongfully detained, as the defendant, failing to make out a case under the act of 1807, was a trespasser ab initio in seizing the cattle: Fitzwater v. Stout, 16 Pa. 22; Miller v. Warden, 111 Pa. 308; Harlan v. Harlan, 15 Pa. 513. Moreover, there is nothing on the record to show that the cattle were ever legally distrained, or what, if any, proceedings were had before the magistrate. The defendant's fourth point was in substance refused in the general charge. But, independent of that, the point was so constructed that it could not be affirmed, and the answer made to it was a proper one.

OPINION, MR. JUSTICE McCOLLUM:

We discover no error in the refusal of the appellant's fourth point. There was some conflict in the evidence respecting

the term for which the appellee rented the ten-acre lot, but it did not authorize the court to say that he was a trespasser in turning his cattle into it. He was not a cropper; he rented the lot for twenty dollars, and whether his term had expired at the time of the alleged trespass, was a question for the jury under the evidence. The court could not declare as matter of law that during that term he had no right to pasture his cattle there. There was no restriction in the lease as to the use of the lot. He was entitled to its product for one, or two years, as the jury might find the agreement. Any use that he might choose to make of it, consistent with the rules of good husbandry, was admissible during his term. In the presence of his cattle there, feeding upon crops which were admittedly his, we discover no violation of any provision of the lease.

The act of April 13, 1807, relating to strays, does not govern this case, because that is applicable only to cattle found trespassing in an enclosed and improved field. The cattle included in this replevin were not so trespassing, and the appellant knew it. They were in his pasture adjoining the lot which the appellee had rented, and between these fields there was no fence. If the appellant had taken them on the lot of the appellee, or in the highway, it is not claimed that he could find protection or justification in the act of 1807. Jurisdiction under that act is founded upon the facts recited in it; and if these are not present, the taking is a trespass, and for a detention in pursuance of it, replevin is an appropriate remedy. A right to take and impound cattle exists when they are found trespassing in the taker's enclosed and improved field, and in such case the proceedings must be in strict conformity with the statute, or the taker will be held as a trespasser ab initio. But, when the taking is unlawful, proceedings under the stray law will neither legalize it, nor take away the common-law remedy of the owner. It is proper to add that in this case there is not a spark of evidence that such proceedings were resorted to.

The specifications of error are dismissed, and the judgment is affirmed.