FRIEMEL v. COKER. (No. 1583.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 28, 1920. Rehearing Denied March 10, 1920.)

**1. LANDLORD AND TENANT ⬤⟿155—TENANT'S DUTY TO REPAIR FENCES.**

It is the duty of the tenant to keep fences on the leased premises in repair.

**2. LANDLORD AND TENANT ⬤⟿136—LESSEE'S DUTY TO USE FARM PROPERTY IN A TENANT-LIKE MANNER.**

In the absence of express agreement there is an implied agreement on the tenant's part to use leased farm property in a tenantlike manner without committing injury to it by acts inconsistent with good husbandry.

**3. LANDLORD AND TENANT ⬤⟿134(6)—TENANT MAY BE RESTRAINED FROM PASTURING STOCK ON WET LANDS.**

An injunction prohibiting a tenant from pasturing stock on the leased lands while they were wet was not wrongful, where there was evidence that such pasturage rendered it difficult to cultivate the lands the next year and was not in accordance with good husbandry.

**4. LANDLORD AND TENANT ⬤⟿134(6)—REFUSAL TO DISSOLVE INJUNCTION AGAINST PASTURAGE OF STOCK NOT AN EVICTION.**

An injunction restraining a tenant from pasturing stock upon leased lands while wet and refusal to dissolve the injunction did not constitute an eviction of the tenant where the injunction might be sustained upon the theory that pasturing stock on wet lands was contrary to good husbandry.

**5. LANDLORD AND TENANT ⬤⟿139(5)—JUDGMENT AGAINST TENANT FOR CROPS DESTROYED SUSTAINED BY EVIDENCE.**

Where cattle entered, ate, or destroyed the landlord's share of the crop, a judgment against the tenant for the value of such part of the crop held sustained by evidence that the tenant did not properly repair the fences protecting the landlord's share of the crop, and that he gave the stock access to such crop.

**6. EVIDENCE ⬤⟿588—COURT NOT BOUND BY TESTIMONY CONTRADICTED BY CIRCUMSTANCES.**

The trial court is not bound to find in accordance with testimony if he believed it to be contradicted by circumstances.

**7. LANDLORD AND TENANT ⬤⟿139(4)—TENANT LIABLE FOR CROP DAMAGES OCCURRING AFTER TERMINATION OF LEASE.**

A tenant violating a duty owing to the landlord by failing to repair fences, etc., is liable for the resulting damage caused by stock entering the premises and destroying crops, although the damage was not fully accomplished before the termination of the lease.

**8. TRIAL ⬤⟿351(2)—COURT MAY FIND ON ISSUES NOT SUBMITTED TO JURY.**

Although it was the court's duty to submit all issues of fact to the jury, under Rev. St. 1911, art. 1985, yet, if there was no request

for a submission of the issues, the court itself could make a finding on it.

**9. APPEAL AND ERROR ⬤⟿930(3)—FINDING OF FACT BY COURT TO SUSTAIN VERDICT ON SPECIAL ISSUES PRESUMED.**

A judgment entered after finding on special issues will be sustained, though all issues of fact were not submitted, as it must be presumed that the court found on necessary facts, under Rev. St. 1911, art. 1985.

**10. LANDLORD AND TENANT ⬤⟿139(4)—TENANT SUED FOR DAMAGES TO CROPS NOT ENTITLED TO RECOVER FOR HIS SHARE DAMAGED WHILE HIS USE WAS RESTRICTED BY INJUNCTION.**

Where a tenant claimed that the landlord had wrongfully excluded him from part of the premises by an injunction, he is not necessarily entitled to recover the value of his share of the crop on land covered by the injunction, where his cattle entered the field and ate or destroyed the crop despite the injunction.

**11. TRIAL ⬤⟿351(2)—NECESSITY OF REQUESTING FULLER STATEMENT IN SUBMITTING AN ISSUE.**

Where the court submitted an issue whether a landlord's eviction of the tenant damaged the tenant by depriving him of pasturage lands, the tenant, if he desired a fuller statement of the law in connection with the submitted issue, should have requested it.

**12. APPEAL AND ERROR ⬤⟿218(2)—PARTY NOT REQUESTING SUBMISSION OF ISSUE TO JURY CANNOT COMPLAIN OF COURT'S FINDING ON CONFLICTING EVIDENCE.**

A party failing to request a submission of the issue to the jury cannot complain of an unfavorable finding by the court based on contradictory and confusing evidence.

Appeal from District Court, Deaf Smith County; Reese Tatum, Judge.

Suit by J. C. Coker against E. J. Friemel. Judgment for plaintiff, and defendant appeals. Affirmed.

Wm. M. Knight, of Hereford, for appellant.

W. H. Russell, of Hereford, for appellee.

BOYCE, J. This suit was brought by appellee, Coker, against appellant, Friemel, to recover damages alleged to have resulted from the failure of Friemel to properly cultivate certain lands leased by Coker to Friemel, under a crop-sharing rental contract. Coker also sought to recover the value of his share of the crop that was raised, alleging that Friemel had permitted same to be eaten by his cattle. He also sought to recover damages to the land caused by trespass thereon of Friemel's cattle. A preliminary injunction against Friemel permitting his cattle to graze on said farm land was issued; and on the trial Friemel, in addition to defending the suit for damages against him, sought to recover damages in a cross-action

on account of the alleged wrongful issuance of the injunction. A trial resulted in a judgment in favor of Coker for damages and against Friemel on his cross-action.

After the expiration of the term of the lease Coker filed an amended petition, in which, in support of the cause of action as we have stated it generally, he alleged that he leased to Friemel for the year 1918 320 acres of land, to be farmed during said year by Friemel; that 200 acres of said land had been previously cultivated, and the balance was sod land; that it was agreed that Friemel was to break the sod land, and as rental for said land was to pay to Coker one-fourth of the crop raised on the sod land and one-third of the crop raised on the old land, Coker's share of said crop to be delivered in shock in the field; that Friemel planted 320 acres, but failed to cultivate the same, as was his duty, so that the crop produced was in value $1,280 less than it would have been had Friemel performed his duty in the matter. It was also alleged that after maturity of the crops that were grown Friemel cut what he claimed was Coker's part thereof, and stacked it in the field, took down the field fence and put some kind of a fence around the stacks and placed his cattle, about 100 head, in said field; that Friemel had no right to pasture said field because Coker had not received his part of the crop, and also because it was wet, and the cattle grazing thereon would greatly injure the land; that on October 30, 1918, the said Coker obtained an injunction against the said Friemel, enjoining him from molesting the fences on said premises, except to replace them, and from permitting his cattle to run in said field; that thereafter the said Friemel, in violation of the injunction and plaintiff's rights, permitted said cattle to go into said field and wholly destroy and eat all the feed therein, including that part of the feed which Friemel had stacked as Coker's part of the crop; that the value of Coker's share of the feed which was thus destroyed was $800. Other damages were also claimed, but, as no question in relation thereto is presented on this appeal, we need make no statement as to such matters.

In answer Friemel specially denied that he had not properly cultivated said land; alleged that the crop produced was not worth the cutting, but that he had, after the maturity thereof, cut Coker's portion and delivered same to him, in the stacks in the field, properly fenced off, and turned his own cattle in the field, as he claimed he had the right to do, to graze his portion of the crops; that he was wrongfully prevented from doing this by the issuance of the injunction already mentioned, for which he prayed damages in the sum of $1,000. He further answered that after the issuance of the injunction he cut and stacked the bal-

ance of the crop and fenced the same off in the field, but that cattle thereafter got into the field and tramped and destroyed the same.

Evidence was offered by each of the parties in support of the allegations made by them, respectively as above stated. In addition to this it appeared that Friemel had leased for a money consideration the other half of the Coker section, leasing it for grazing purposes; that he also had other lands adjoining Coker's section on the south, which he used for grazing purposes, the grazing lands being in one inclosure, and the half section of farm land owned by Coker being fenced off to itself. Friemel testified that he cut what he considered to be one-third of the crop grown on the old land and one-fourth of the crop grown on the sod land, and stacked it in the corner of the field near the south side; that he took down some of the field fence near the stacks, and with the wire and posts built a three-wire fence around the stacks. After the service of the injunction Friemel took his cattle away for a time, and while they were away cut the other parts of the crop, stacking it also in the field, and fencing it. He testifies that at this time he fixed up the field fence. On December 16th a very heavy snow fell in that section, and Friemel brought his cattle back, and soon thereafter they were seen in the field going back and forth from it to their watering place in Friemel's pasture. Friemel testified that there were weeds piled up against the fences, and that the snow drifted against these and weighted the fence down so that the cattle could pass over. The cattle remained in the pasture, going into the field from about December 16th to some time in February, during most of which time the snow remained on the ground. In February Coker testified that he visited the field and found the gates laid back so that the cattle could get into the field and to the feed stacks, and at this time all of the feed was eaten or destroyed.

The case was submitted to the jury on special issues, and the jury found: (1) That Friemel did not cultivate the crop on the 200 acres of old land in a workmanlike manner; (2) the facts from which it could be computed that Coker sustained damages on this account in the sum of $182; (3) that Friemel delivered to Coker one-third of the crop cut and other facts from which could be determined the value thereof and the amount of the feed cut from the old land; (4) that Friemel suffered no damage by reason of being deprived of the pasturage of the land on account of the issuance of the injunction.

The court rendered judgment in favor of Coker for the sum of $182.22, damages for failure of Friemel to properly cultivate the land, and for the further sum of $444.44, the value of the crop delivered to Coker and

which was eaten or destroyed by Friemel's cattle.

[1] The first four assignments complain of the inclusion in the judgment of the said sum of $444.44, allowed Coker as damages for the feed stacked for him by Friemel, and which was eaten or destroyed by Friemel's cattle. Various propositions are advanced in support of appellant's contention that there is error in this part of the judgment; that the crop had been delivered, and the tenant owed to the landlord no further duty in reference thereto; that the tenant, Friemel, was evicted by the injunction proceedings, and the relation of landlord and tenant did not exist after November 1st, so that the tenant owed no duty thereafter of keeping up the fence and protecting the feed from the depredation of stock; that in any event Friemel would be liable only for the damages that would be sustained up to December 31st, the end of the term of the lease, and the evidence does not show what part of the damages had been sustained up to that time. The jury having found there was a delivery of the plaintiff's part of the feed, the trial court could not enter a judgment contrary to this finding, so that we must assume that the court found that, notwithstanding such delivery, Friemel violated some duty which he owed Coker in the protection of the feed from Friemel's stock. We think, however, that in support of the judgment we may assume that the court found that Friemel was liable for the feed eaten by his cattle on one of the other several theories. It is the duty of the tenant to keep the fences on the leased premises in repair (Morgan v. Tims, 44 Tex. Civ. App. 308, 97 S. W. 832; O'Connor v. Andrews, 81 Tex. 28, 16 S. W. 628; Taul v. Shanklin, 1 White & W. Civ. Cas. Ct. App. 1138), and the court may have found that this duty existed in this instance and the damage resulted on account of Friemel's failure to discharge it.

[2] The reason advanced by appellant in opposition to this probable conclusion on the part of the court is that the issuance of the injunction was equivalent to an eviction, and appellant therefore contends that the relation of landlord and tenant between the parties was thereby terminated. It seems to be appellant's contention that he was entitled to the absolute right to graze the land, and the denial of this right was wrongful and constituted an eviction. It may be true that one renting farm land would have in general the right of pasturage thereon, if the exercise of such right be consistent with good husbandry. Irwin v. Mattox, 138 Pa. 466, 21 Atl. 209. But in all lease contracts, in the absence of any express agreement as to the use of the leased premises, there is an implied agreement on the part of the tenant "to use the property in a tenantlike manner, and without permitting or committing injury

to the property." Underhill on Landlord & Tenant, p. 731; Gorman v. Brazelton, 168 S. W. 434; United States v. Bostwick, 94 U. S. 53, 24 L. Ed. 65.

[3-5] It was alleged in the petition for injunction, and there was testimony on the trial of the case, that the pasturing of cultivated lands when the lands are wet is harmful in that it renders it very difficult to cultivate such lands the next year. Under the circumstances we think it would become a question of fact as to whether the pasturage of land at such times would be in accordance with good husbandry, and the court would have been warranted in finding that for this reason, if for no other, the injunction was not wrongfully issued. If, after the issuance of the injunction, the land became dry and subject to pasturage, the appellant could have moved for a dissolution of the injunction. It does appear that he made a motion for the dissolution of the injunction, and this hearing was set for December 16th, but he failed to appear at such hearing, and the court overruled the motion to dissolve; one reason assigned in the order on the motion being that it appeared from the petition that it was injurious to cultivate lands to pasture them while wet. Under such circumstances, then, the issuance of the injunction and the refusal of the court to dissolve it was not necessarily wrongful and did not necessarily constitute an eviction. Besides, the tenant, Friemel, did not treat the issuance of the injunction as an eviction, but apparently for a while acquiesced in the restricted use of the land, and thereafter, as he claims, repaired the fences and cut and stacked the feed, in accordance with the construction placed on his rights by the court. So that we think the judgment of the court could be sustained on the ground that the court found that Friemel did not discharge his duty to the landlord in repairing the fences and protecting the feed thereon against the depredation of his stock.

[6, 7] The court may also have found that Friemel not only did nothing to prevent his cattle from entering the inclosure where the feed was, but that he opened the gates or took down the fence so that they might do so. While Friemel testified that when he took his cattle out he fixed up the fences which he had previously taken down, and that he did not open the gates into the field, it was shown that the gates were open, and that his cattle were going in and out for about two months thereafter, and the court may not have credited his testimony; the court was not bound to have found in accordance with Friemel's testimony if he believed it to be contradicted by the circumstances. Burleson v. Tinnin, 100 S. W. 350; Rayner v. Posey, 173 S. W. 249. If Coker violated some duty which he owed Friemel in respect to the feed that was on the prem-

ises, and the violation of this duty occurred prior to the termination of the lease contract, the wrong was a continuing one, and the court was justified in finding for the plaintiff the total value of the crop destroyed, though it should not appear that the destruction had been wholly accomplished before the termination of the lease contract.

[8, 9] By the ninth assignment it is asserted that it was error to enter judgment for said $444.44, because there was no finding of the jury upon which the judgment could be based. The court did not submit any issue as to the liability of Friemel for damages for his cattle consuming Coker's part of the crop. It was the duty of the court to submit all of the issues of fact to the jury. R. S. art. 1985. But, if there was no request for the submission of the issue, the court could find thereon himself, and if the judgment can be supported by the evidence, it must be sustained, as we must presume that the court found on such facts so as to support the judgment. R. S. art. 1985; Moore v. Pierson, 100 Tex. 113, 94 S. W. 1132.

[10] By the fifth and sixth assignments appellant complains of the refusal of the court to submit this issue, "What was the value of the defendant's share of the crop before it was cut together with the use of the field for grazing purposes from November 1, 1918, to January 1, 1919?" and of the refusal of the court to charge the jury in connection therewith in effect that the injunction constituted an eviction, and the appellant would be entitled to such damages as the jury might find in answer to this issue he had sustained. As we have already held, we do not think the injunction was necessarily wrongfully issued, and for this reason the submission of this issue, together with such instructions, would have been improper. But, even if the injunction were wrongful, it does not necessarily follow that the measure of damages, as stated in this requested issue, is correct. After the issuance of the injunction, Friemel cut the balance of the crop and stacked it in the fields. He would have had the right thereafter to enter the premises and remove it, and as a matter of fact he permitted his cattle to enter the field and eat or destroy such feed. Under the circumstances he would not be necessarily entitled to a recovery as damages the value of the feed and the use of the field for grazing purposes. The court did submit an issue of damages, thus, "Was the defendant damaged by reason of being evicted from said land by the plaintiff by reason of being deprived of the use of the land for pasturage for his cattle from November 1, 1918, to December 31, 1918?" and to this issue the jury answered "No." We think the court's submission of the issue was more nearly correct under the facts than would have been the submission of the question of damages as requested by the appellant.

[11] The appellant complains, by the seventh and eighth assignments, of the submission of the issue just quoted, the ground of the complaint being that the court thereby "submitted a mixed question of law and fact and gave the jury no instruction in regard to the law," and that the court assumed that the issue was doubtful where "the undisputed evidence shows that the plaintiff, in suing out the injunction, deprived defendant of his right of grazing his share of the crop." We do not think either of these objections well taken. The appellant, if he so desired, should have requested a fuller statement of the law in connection with the submission of the issue. As we have already explained, the appellant was not wholly deprived of any benefit from his share of the crop by the issuance of the injunction, and the jury evidently found that it was worth as much to him in the stack as it would have been standing in the field, as it was eaten by his cattle notwithstanding the injunction.

[12] We overrule the cross-assignment presented by appellee. This cross-assignment complains that the court did not enter judgment for the appellee for the value of the feed grown on the sod land, and which was also eaten or destroyed by Friemel's Cattle. No issue was submitted by the court from which the amount of this feed could be determined. The only testimony in regard to this feed is that given by Friemel, and it is contradictory. In some parts of his testimony he states that this feed was burned up and amounted to very little. If the appellant desired a finding by the jury on the issue, he should have requested an instruction thereon. Failing to request an instruction thereon, he cannot complain that the court did not make a finding favorable to him on the contradictory and confusing evidence that was introduced at the trial.

We find no reversible error, and therefore affirm the judgment.