**TURNER et al. v. McNUTT.**

**No. 5718.**

Court of Civil Appeals of Texas. Amarillo.

Oct. 7, 1946.

Rehearing Denied Nov. 9, 1946.

J. W. Spivey, Jr., of Borger, for appellants.

J. O. Ward, Walter R. Allen and R. C. Marshall, all of Borger, for appellee.

STOKES, Justice.

On April 26, 1945, the appellee, Roy McNutt, leased to the appellants, Eusie Turner and Earl M. Butler, approximately 1000 acres of land in Hutchinson County for a term of five years, to be used principally as a wheat farm. The lease was in writing and it provided that the lessees should farm the land as they saw fit. As rental therefor, they agreed to deliver to the appellee in an elevator one-third of all grain and to deliver in the field one-third of all row crops produced from the land during the term of the lease. They further agreed that, at the termination of the lease, or sooner if it should be forfeited, they would surrender the premises in as good state and condition as it was then they received it, reasonable wear and tear thereof excepted. Appellants planted the principal portion of the cultivated land in wheat during the early fall of 1945 and during the fall and winter and into the spring months of 1946 they grazed a number of cattle on the growing wheat. During the fall and winter appellee expressed to the appellants his objection to their permitting cattle to graze upon the wheat and on December 31, 1945, he filed this suit, alleging that, contrary to the provisions of the lease and the agreement between them, appellants had placed a large number of cattle upon the

growing wheat crop and were permitting them to graze upon the same, and that the pasturing or grazing of cattle thereon would do great and serious injury to the land, subject it to erosion from winds, destroy its productivity, and substantially reduce its value for any purpose. He alleged that the injury and damage then being caused and that would be caused by such pasturing and grazing were incapable of calculation in money and that he would suffer great and irreparable loss and injury to his farm lands if appellants should continue their practice of grazing cattle thereon. He alleged that, unless appellants were restrained by a writ of injunction from further grazing cattle upon the lands, appellee would continue to suffer great loss and damage and that no adequate remedy at law was available to him. He prayed for a temporary restraining order and for a permanent injunction restraining appellants from further violating the provision of the lease and from further grazing their cattle upon the wheat lands, for costs of suit and general relief.

The petition was duly verified and presented to the District Judge on December 31, 1945, when a temporary restraining order as prayed for was issued. Appellants filed an answer in which they denied the allegations and on April 5, 1946, the case was finally tried before the court without the intervention of a jury and resulted in a decree perpetuating the temporary restraining order and perpetually enjoining appellants from permitting cattle or other livestock to run upon or graze any of the cultivated lands except a small tract that had been planted in sudan grass. Appellants duly excepted to the judgment and have brought the case here for review, asserting that the court erred in a number of particulars. The assignments of error present in various ways the issue of whether or not the injunction was warranted by the evidence and, as that is the controlling issue, we do not deem it necessary to discuss the assignments separately.

 As will be noted, the lease provided that appellants should farm the land as they saw fit. It contained no provision with reference to grazing livestock upon the growing wheat. This can mean only that they would handle the land and cultivate it in a farmerlike manner, and use all reasonable diligence to preserve the estate and make such returns to the appellee as were possible by the exercise of reasonable diligence in their management and use of the premises, unrestricted by any unwarranted interference of the appellee in so far as the planting of crops and use of the premises were concerned. They were, however, under the obligation to manage and cultivate the premises in such manner as to achieve those purposes and to avoid the infliction of injury and damage to the soil beyond that which would naturally result from its reasonable and proper cultivation. Although the contract did not so state, the lease implied an agreement to the effect. Friemel v. Coker, Tex.Civ.App., 218 S.W. 1105; Cammack v. Rogers, 32 Tex.Civ.App. 125, 74 S.W. 945; Marvin Drug Co. v. Couch, Tex.Civ. App., 134 S.W.2d 356; Harrelson v. Miller & Lux, Inc. 182 Cal. 408, 188 P. 800. The law is well settled that an injunction will lie to restrain a tenant who is attempting or threatening to commit waste upon leased premises or to perform such acts as will result in changing, injuring or damaging the property so that it cannot be returned to the owner in the condition in which it was received, allowing, of course, for reasonable wear and tear incident to its lawful use. Gorman v. Brazelton, Tex. Civ.App., 168 S.W. 434; Friemel v. Coker, Tex.Civ.App., 218 S.W. 1105.

 The testimony showed, and we think it is a matter of common knowledge, that cultivated land planted in wheat can be injured and materially damaged by the excessive pasturing of livestock thereon and under some conditions serious and permanent injury to the estate can be inflicted. These conditions arise, according to the testimony in this case, when the land is wet or when it is very dry and the pasturing of livestock thereon has a tendency to trample down the vegetation or work the surface into a dust-like mulch and thereby subject it to erosion by high winds and storms. However, no such conditions are shown by the testimony in this case to have resulted from the use which appel-

lants were making of the leased land. Appellee testified that the manner in which appellants were grazing the land at the time of the trial would ruin both the land and the wheat but he did not attempt to detail any acts of appellants or conditions that were being created by them which would have that result. He said that, if the cattle tramped the land so as to level it off to a hard surface, it would result in damage and the top soil would blow away, but he did not claim that the grazing of appellants' cattle thereon had resulted in producing that condition. He said that he himself had farmed the land many years and that he always used greater precaution in grazing wheat land in a dry year than in a seasonable one and that he wanted appellants' cattle off of the wheat because they were ruining the land and also the wheat. He said that, when he was farming the land, he never pastured his wheat until it was old enough and tough enough to be well rooted and that this was usually in December and January. He said appellants were grazing the wheat entirely too early and two heavily; that, in his opinion, none of it ought to be grazed after the first of March and that his grazing of wheat depended upon the moisture and other conditions. The only specific injury or damage he detailed in his testimony had reference to the wheat. He detailed no injurious condition or damage that had been inflicted upon the land itself by the use which appellants were making of it, nor was it shown that anything beyond the reasonable wear and tear of the soil would result from the manner in which appellants were grazing it. Clearly the statement that the land was being injured and ruined was appellee's opinion only as to what the result would be if appellants grazed the wheat according to their own judgment instead of his and, in our opinion, it failed to present a condition upon which an injunction was warranted. In addition to their own testimony, appellants introduced a number of witnesses who were wheat farmers in the local community and they all testified, in effect, that ordinarily it was necessary to graze livestock upon growing wheat at intervals in order to induce it to spread and accelerate the growth of the roots. The testimony was all to the effect that, if it were not grazed, its tendency was to produce more stalk and consume the moisture before it was needed and that when it developed to the stalk-stage before the spring months it was likely to freeze in the winter time and result in great damage in the reduction of the product. The testimony further showed, without dispute, that it was customary all over that section for farmers to graze their wheat during the fall, winter and early spring and no witness testified that grazing wheat under proper conditions was detrimental either to the land or to the crop. Some of the witnesses had viewed this particular crop only a few days before the trial and they testified it was in good condition. They said there were cattle grazing on it, but there was no evidence it was being excessively grazed or that any damage was being inflicted upon either the land or the wheat. No witness testified otherwise except the appellee, and as we have said, his statement was clearly nothing more than his opinion as to what the result would be if appellants grazed the wheat in accordance with their judgment instead of his. The opinion expressed by him was lacking in probative force and was wholly insufficient to form the basis of a decree perpetually enjoining the appellants from grazing their wheat in a proper manner and under proper circumstances during the several years yet to elapse before the lease would expire. McCown v. Muldrow, 91 S.C. 523, 74 S.E. 386, Ann.Cas.1914A, 139.

■ Appellants had the right under the contract to exercise their own judgment as to the proper management and cultivation of the crops in order to produce as much wheat as possible. The testimony showed their judgment in cultivating the land was being exercised in accordance with that of other wheat farmers in the community, including the grazing of their cattle upon the wheat, but if they had deviated to some extent therefrom, it would not necessarily have been a violation of the lease contract because it specifically gave to them the right to cultivate the land according to their best judgment, and, even if their judgment had been wrong, appellee would not have been entitled to an injunction

---

against them unless their management of the land was resulting in permanent injury to the estate. As we have said, there was no substantial testimony that they had done so or that they threaten or contemplate doing so in the future.

From what we have said, it is clear that in our opinion the court below erred in granting to appellee an injunction against the appellants and its decree will, therefore, be reversed, the injunction dissolved, and the cause remanded.